IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

```
JOSEPH H. PAGE;                      )
FRANCES K. PAGE,                     )
                                     )
            Plaintiffs,              )
                                     )
     v.                              )    Case No. 13-2073-RDR
                                     )
                                     )
FARM CREDIT SERVICES OF              )
AMERICA, PCA                         )
            Defendant.               )
```

## MEMORANDUM AND ORDER

This matter is presently before the court upon the motion of defendant Farm Credit Services of America (FCSA) for summary judgment. FCSA seeks summary judgment on all of the claims asserted by plaintiffs Joseph and Frances Page. Having carefully reviewed the extensive arguments of the parties, the court is now prepared to rule.

The claims in plaintiffs' complaint arise from two loans they had with FCSA. The Pages had received the loans to purchase cattle and feed for a feedlot in Cedar Rapids, Nebraska that was operated by Big Drive Cattle, LLC, an entity in which plaintiffs had an ownership interest. The Pages claim that, during the course of the loans, FCSA failed to properly monitor and inventory the cattle pursuant to the security agreement entered into between the parties.

Plaintiffs assert claims of negligent misrepresentation, fraudulent misrepresentation, negligence and breach of good faith and fair dealing.

I.

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The requirement of a genuine issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Essentially, the inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. Id. at 251-52.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be met by showing that there is a lack of evidence to support the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of

2

material fact left for trial. See Anderson, 477 U.S. at 256. A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of [its] pleading, but must set forth specific facts showing that there is a genuine issue for trial. Id. Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. See id.

When reviewing a motion for summary judgment, the court should keep in mind three principles. First, the court's role is not to weigh the evidence, but to assess the threshold issue whether a genuine issue exists as to material facts requiring a trial. See Anderson, 477 U.S. at 249. Second, the court must resolve all reasonable inferences and doubts in favor of the non-moving party and construe all evidence in the light most favorable to the non-moving party. See Hunt v. Cromartie, 526 U.S. 541, 550-55 (1999). Third, the court cannot decide any issues of credibility. See Anderson, 477 U.S. at 255.

The court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." Celotex, 477 U.S. at 327 (quoting Fed.R.Civ.P. 1).

3

II.

Many of the facts are not in dispute. Big Drive, LLC owned and operated a cattle feedlot near Cedar Rapids, Nebraska. The feedlot was purchased by Big Drive on or about March 10, 2010. Big Drive was owned by the Pages, Don and Carole Haun and Carol and Shirley Knisley. Prior to the purchase of the feedlot, this group had leased the feedlot from a person in Texas. The feedlot was managed by A.J. Ostrander, both during the time the feedlot was leased and from the date Big Drive acquired it until he was fired in February 2011.

The feedlot purchase was financed by FCSA and their affiliated entity, Farm Credit Services of America, FLCA (FLCA). Big Drive also obtained a loan from the FCSA and FLCA to operate the feedlot. The Pages and the other owners of Big Drive personally guaranteed payment of the Big Drive loans.

On March 20, 2010, the Pages obtained a $2,500,000 operating loan from FCSA to finance the purchase of cattle to be fed at the feedlot. The Promissory Note and Loan Agreement signed by the Pages at the closing of the loan stated the following under the term "Borrowing Case":

> The Borrower agrees to maintain a minimum margin between the value and advance rate of certain secured assets and the amount of certain liabilities (Borrowing Base). Said margin will be computed according to a Borrowing Base Report acceptable to

4

Lender, an example of which is attached hereto as Exhibit B. The Borrowing Base Report shall be accompanied with itemized accounts receivable and accounts payable report, a cattle inventory yard sheet, an itemized feed and grain inventory report, an itemized prepaid expenses report, an itemized growing crop inputs report, a report of packer contracts and a report of pen closeouts.

Borrower agrees to provide Lender with such Borrowing Base Report monthly (Reporting Period), or more often at the discretion of Lender, during the term of the Loan(s), commencing April 1, 2010. Said Borrowing Base Report shall be dated the 1st day of the Reporting Period (Report Date) and reflect true and accurate inventory of Borrowing Base Assets and Borrowing Base Liabilities current through the end of the Reporting Period. Said Borrowing Base Report shall be completed by Borrower and provided to Lender no later than the 20th day following the Report Date, by ordinary mail or electronic transmission and shall be in default if not provided within 30 days after said Report Date.

THE TOTAL BORROWING BASE LIABILITIES SHALL NOT EXCEED THE BORROWING VALUE OF THE TOTAL BORROWING BASE ASSETS.

Upon receipt of the Borrowing Base Report, Lender will determine the Borrower's credit availability based on the value of the inventory and assets owned by Borrower on each Report Date and whether Borrower is in compliance with their Borrowing Base. Should the total Borrowing Base Liabilities exceed the Borrowing value or Borrowing Base Assets, Borrower agrees to restore compliance with the Borrowing Base margin within 30 days from the Report Date, and that during said restoration period Lender may advance credit to Borrower as Lender may deem adequate to protect its collateral. It is agreed that if Borrower cannot, or will not, reduce the Total Borrowing Base Liabilities to an amount equal to or less than the borrowing value of the Total Borrowing Base Assets within said restoration period, Lender may deem said failure to be a material breach of this Agreement and an Event of Default.

In January 2011, the Pages sought an additional loan from FCSA of $810,000 to be used for the purchase of corn to feed the cattle at the feedlot. The Pages executed guarantees of their loans from FCSA on behalf of their revocable trust.

Ostrander, as the manager of the feedlot, had the authority to authorize disbursements of funds from the loans to Big Drive and to the Pages. Mr. Page talked with Ostrander every morning during the time he fed cattle at Big Drive and would ask Ostrander how his cattle were doing. Mr. Page did not keep track of the sale of his cattle. Rather, he gave the authority to handle the sale of the cattle to Ostrander because "that's what managers are for." Mr. Page was at the feedlot four or five times while his cattle were fed there. In either August or October 2010, Mr. Page visited the feedlot with a friend. During that visit, Mr. Page's friend printed off a lot sheet for Mr. Page's cattle and Mr. Page discovered he "was right at 5000 head of cattle short at that day" from what he had sent to the feedlot.

In January 2011, Mr. Page met with Ostrander and Stofer. Mr. Page asked how many cattle were at the feedlot. Stofer "looked at Mr. Ostrander and said he thought they counted 2500 right?" Ostrander said yes. On January 16, 2011, Mr. Page

6

purchased 200,000 bushels of corn from the feedlot to feed the cattle. The Pages secured the purchase of the corn through a $810,000 loan financed by FCSA.

In February 2011, Ostrander was fired by Big Drive. The Pages then learned that some of the cattle that they believed were at the feedlot were not there.

In March 2011, the Pages were notified by FCSA that it was terminating the Pages' loan for their operating line of credit due to "insufficient assets in relation to liabilities." In April 2011, FCSA demanded full payment of the loan.

On September 9, 2011, Big Drive filed for bankruptcy in the United States District Court for the District of Nebraska. The Pages filed a proof of claim in the Big Drive bankruptcy seeking to recover $2,315,000 from Big Drive.

There are numerous other facts, some which are disputed and some which are not. The court shall consider some of those facts as we consider the claims made by the Pages in this case.

The claims asserted by the Pages in this case are based upon the allegation that Justin Stofer, FCSA's loan officer, told Mr. Page during the closing of the FCSA's loan that he would go out to the feedlot every month and count the cattle at the feedlot. The Pages blame FCSA for the cattle shortage that occurred at the feedlot. They contend that the FCSA undertook

the task to provide them with the monthly reports, and these reports were to show an accurate count of the cattle at the feedlot. The Pages contend that these reports were false and misleading, they relied upon them, and were damaged.

The following facts are uncontroverted in the record concerning the reports compiled by Stofer and the Pages' reliance upon them. Mr. Page has indicated that he read the documents at closing before he signed them. He has further admitted that the purported representation made by Stofer at the closing was made orally and was never committed to writing. The Pages acknowledge that Stofer compiled the Borrowing Base Reports from information provided to him by the feedlot. Stofer would send the report to Mr. Page with attachments. He would later discuss the report with Mr. Page by telephone. Mr. Page has indicated that he never relied upon the reports sent by Stofer. He did, however, indicate that he discussed the substance of the reports with Stofer over the telephone.

The Pages also contend that they purchased 200,000 bushels of corn from the feedlot for cattle feed because Stofer misled them to believe that there were 2,500 cattle at the feedlot. They have alleged that they would have not purchased that much corn if they had known how many cattle were actually at the feedlot.

8

III.

This is a diversity case. In a diversity action, the court applies the substantive law of the forum state, including its choice of law rules. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 495-97 (1941); New York Life Ins. Co. v. K N Energy, Inc., 80 F.3d 405, 409 (10th Cir. 1996). The parties agree that Kansas law controls this case.

The court shall begin with an examination of the contract entered into between the parties. A review of this document shows that it imposed no duty on the FCSA to determine the amount of cattle held by the Pages at the feedlot. While the loan documents mention "Borrowing Base Reports," the documents do not require, or imply, that the FCSA will assure the accuracy of the Borrowing Base Reports. Rather, the promissory note imposed a duty upon the Pages to inform the FCSA of the amount of cattle it maintained at the feedlot. Accordingly, the court finds that the FCSA had no duty to monitor the administration of the loan under the loan documents. See Boyd v. U.S. Bank National Assoc., No. 06-2115-KGS, 2007 WL 2822518 at *14-15 (D.Kan. Sept. 26, 2007).

A. Negligence

A plaintiff in a negligence action must prove four elements: (1) a duty owed to the plaintiff, (2) a breach of

9

that duty, (3) the breach of the duty was the cause of the injury, and (4) damages suffered by the plaintiff. P.W. v. Kansas Dept. of SRS, 255 Kan. 827, 831, 877 P.2d 430 (1994). The defendant has argued that it owed no duty to the plaintiffs here. The court agrees.

Kansas courts have determined that lenders do not owe any duty of care to borrowers under Kansas law. Bank IV Wichita, N.A. v. Arn, Mullins, Unruh, Kuhn & Wilson, 250 Kan. 490, 505, 827 P.2d 758 (1992); Daniels v. Army National Bank, 249 Kan. 654, 657, 822 P.2d 39 (1991). The borrower/lender relationship has an adversarial character. Jack v. City of Wichita, 23 Kan.App.2d 606, 614, 933 P.2d 787 (1997). The relationship between a borrower and lender is one of contractual obligation, not of duty. United States v. Wells, No. 96-1028-JTM, 1998 WL 47799 at * 4 (D.Kan. Jan. 30, 1998). "A lender and borrower relationship does not create on the lender a duty to supervise the borrower for the borrower's benefit." Sunflower Bank, N.A. v. Airport Red Coach Inn of Wichita, LLC, 175 P.3d 883, 2008 WL 360641 at *12 (Kan.App. 2008)(table case). Even a long-standing relationship and prior dealings may not be enough, in themselves, to impose fiduciary duties. Dagan v. First Natl. Bank, 227 Kan. 201, 208, 606 P.2d 1009 (1980). This court has recognized that "'Kansas courts are hostile toward any attempt to

impose special duties on financial institutions.'" Glad v. Thomas County Natal Bank, No. 87-1299-C, 1990 WL 171068 at * 3 (D.Kan. Oct. 10, 1990) (quoting Rossi, 'Lender Liability in Kansas: A Paradigm of Competing Tort and Contract Theories,' 29 Washburn L.J. 495, 504 (1990)).

The Pages rely upon Tri-Company Const., Inc. v. Farmers & Merchants State Bank, 803 P.2d 1060 (Kan.App. 1991)(table case), for support of their negligence claim. The Pages suggest that the facts of Tri-Company are "surprising similar" to the facts of this case. We must disagree.

First, the court notes that Tri-Company is an unpublished decision and such decisions are neither precedential nor favored for citations. See Kan.S.Ct. Rule 7.04(f). Moreover, the court finds no published decision where this opinion has been cited for authority. Thus, Tri-Company's importance or value, even if it had some relevance here, would be minimal.

Secondly, and more importantly, the facts in Tri-Company are decidedly different from those in this case. There, the plaintiff had a twenty-year history dealing with the defendant bank. During this period, the bank had allowed loans to extend past their maturity dates and routinely allowed Tri-Company to pay salaries and the cost of materials and supplies notwithstanding the defaults. Problems developed in 1984 and

11

the bank, without prior notice, declared a default and offset the money in Tri-Company's bank account leaving it with only $10. Tri-Company was forced into bankruptcy. Tri-Company filed suit against the bank seeking damages caused by the offset. The trial court entered a directed verdict on Tri-Company's claims for breach of contract, negligence and breach of fiduciary duty. The court allowed Tri-Company's bad faith claim to go to the jury, but the jury was unable to reach a verdict. The trial court then revisited the bank's request for a directed verdict on the bad faith claim, and granted it. On appeal, the Kansas Court of Appeals reversed and remanded the case for further proceedings on Tri-Company's claims of breach of contract, negligence and bad faith claims. In doing so, the court determined that "the record ... indicated that, at the very least, the bank owed a duty of good faith to Tri-Company in several particulars, including the duty to make a good faith verification of Tri-Company's receivables." It is this finding of potential bad faith arising out of the bank's failure to conduct a reasonable accounts receivable review before calling the loans with a twenty-year track record, together with the lender's decision to end the parties twenty-year relationship and course of dealing without notice, that caused the court to reverse the trial court.

The court finds virtually no similarities to the instant case. Here, there is no history of allowing defaults and no last minute calling of loans despite having allowed similar defaults over twenty years. Thus, unlike Tri-Company, there has been no long term practice by FCSA that could create a duty similar to that imposed on the bank in Tri-Company. Without a duty of care, the Pages' claim of negligence fails. Accordingly, the court shall grant summary judgment to FCSA on this claim.

B. Negligent/Fraudulent Misrepresentation

The FCSA is also entitled to summary judgment on plaintiffs' negligent misrepresentation and fraudulent misrepresentation claims. The court finds, in accord with the argument asserted by the FCSA, that plaintiffs cannot demonstrate that they justifiably relied upon the purported misrepresentations made by the FCSA.

In order to prove a claim for fraudulent misrepresentation of existing facts under Kansas law, the plaintiff must show (1) an untrue statement of material fact; (2) known to be untrue by the person making it; (3) made with an intent to deceive or with reckless disregard for its truth or falsity; (4) the justifiable reliance by another party on the statement's truthfulness; and (5) injury as a result of the reliance. Bank IV Salina, N.A. v. Aetna Casualty & Surety Co., 810 F.Supp. 1196, 1207

13

(D.Kan.1992). Negligent misrepresentation is a "lesser included" claim; it differs from fraudulent misrepresentation only in that, while the latter requires knowledge that the statement was false, the former merely requires that the person who made the statement failed to exercise reasonable care or competence to obtain or communicate true information. Mahler v. Keenan Real Estate, Inc., 255 Kan. 593, 604, 876 P.2d 609 (1994); Raymark Indus., Inc. v. Stemple, 714 F.Supp. 460, 468 (D.Kan.1988).

To prove its claims of fraudulent and negligent misrepresentation, the Pages must demonstrate that their reliance was "reasonable, justifiable and detrimental." Comeau v. Rupp, 810 F.Supp. 1127, 1161 (D.Kan.1992). The test for reasonableness is "whether the recipient has 'information which would serve as a danger signal and a red light to any normal person of [equal] intelligence and experience.'" K-B Trucking Co. v. Riss Int'l Corp., 763 F.2d 1148, 1158 (10th Cir. 1985) (citations omitted). Put another way, the test is "whether the recipient of the information has knowledge that would alert a reasonable person to the potential falsity of the information." Metal Trading Services v. Trans-World Services, 781 F.Supp. 1539, 1545 (D.Kan.1991).

There are a number of problems with the evidence offered in support of these claims. The most important issue is that the

Pages cannot show, in light of the entirety of the circumstances, that they justifiably relied upon the representations made by Stofer.  The Pages signed an agreement which specifically provided that they were responsible for ensuring that the information received by the FCSA was accurate.  The specific language of this agreement was indeed a "red light to any normal person of equal intelligence and experience" that any statements made by Stofer could not be relied upon by them.  Moreover, the Pages have acknowledged that Stofer received his numbers for the Borrowing Base Reports from information provided by the feedlot.  They were well aware that these numbers came from their own feedlot.  Mr. Page has also admitted that he did not look at or rely upon the Borrowing Base Reports in making decisions concerning the feedlot.

In sum, the court finds that the Pages have not made a sufficient showing of justifiable reliance here.

C. Breach of Duty of Good Faith and Fair Dealing

Kansas law implies the duty of good faith and fair dealing in almost every contract.  Bonanza, Inc. v. McLean, 242 Kan. 209, 222, 747 P.2d 792 (1987).  That duty does not increase, amend or otherwise modify the express terms or obligations of a contract.  Pizza Mgmt., Inc. v. Pizza Hut, Inc., 737 F.Supp. 1154, 1179 (D.Kan. 1990).  Instead, the duty of good faith and

15

fair dealing is derivative in nature in that it does not supply new contract terms, but grows out of existing ones. Kindergarten Count, Inc. v. DeMoulin, 249 F.Supp.2d 1233, 1243 (D.Kan. 2003).

The agreement between the parties in this case clearly stated that the Pages were responsible for the production of the Borrowing Base Report.  The agreement provided no basis for the proposition that the FCSA was responsible for the counting of the Pages' cattle at the feedlot.  Because the Pages have not shown there was any agreement by FCSA to inventory or count the cattle at the feedlot, the Pages' claim for breach of duty of good faith and fair dealing must fail.  FCSA is also entitled to summary judgment on this claim.

## IV.

In sum, for the aforementioned reasons, FCSA is entitled to summary judgment on all of the claims asserted by the Pages. With these rulings, the court need not consider the arguments raised by the parties.

IT IS THEREFORE ORDERED that defendant's motion for summary judgment (Doc. # 45) be hereby granted. Judgment shall be entered for the defendant Farm Credit Services of America, PCA and against the plaintiffs, Joseph H. Page and Frances K. Page.

**IT IS SO ORDERED.**

Dated this 6TH day of August,2014, at Topeka, Kansas.

                                        s/RICHARD D.ROGERS
                                      Richard D. Rogers
                                      United States District Judge